WILLIAM R. PHELPS et al., Appellants, *v.* WILLIAM KELLOGG, Appellee.

### APPEAL FROM PEORIA.

The fact that a party has made proof of a preëmption to the satisfaction of the land officers does not give him a title to the land, until he makes an entry of it, and pays for it; any release of title prior to entry and payment ceases as against the purchaser, so soon as the entry is made.

But where a party covenants in a deed, that if at any time thereafter he shall acquire title, that such title shall inure to the benefit of the grantee in the deed, it is binding on all persons deriving title through the grantor with notice of the deed.

THIS was an action of ejectment brought by the plaintiffs, who were plaintiffs below, to recover from defendant the posses-

sion of lot No. 4, in block No. 51, in Bigelow & Underhill's addition to Peoria, situate on a part of the north-east fractional quarter of section 9, T. 8 N. 8, E. of the fourth principal meridian.

The declaration contained two counts. The first claimed the whole lot; the second the undivided two thirds part of said lot.

The defendants plead not guilty. The parties agreed to submit the case to the court without the intervention of a jury. The court, after hearing the evidence and allegations of the parties, found the defendant not guilty. The plaintiffs moved the court for a new trial, for the reason that the finding of the court was against law and evidence, which motion was overruled, and judgment rendered in favor of defendant and against the plaintiffs for costs, to which finding of the court and the overruling of said motion for a new trial, the plaintiffs then and there excepted.

The plaintiffs, to maintain the issue on their part, proved that on, before, and after the 5th day of April, A. D. 1832, John L. Bogardus was a settler and housekeeper on the south-east fractional quarter of section nine in township eight, north range, eight east of the fourth principal meridian, of which the lot in controversy is a part; that as such settler and housekeeper he was entitled to a preëmption right to said fractional quarter section under the act of Congress, approved April 5th, 1832, entitled, An Act supplementary to the several laws for the sale of the Public Lands; that this right to a preëmption was in due form of law proved on the fourth day of August, A. D. 1832; that a certificate of preëmption was, in due form of law, issued to the said John L. Bogardus on the fourth day of August, 1832, upon his filing his said proofs of a right to a preëmption, which said certificate is as follows, to wit:—

"Land Office, Quincy, Illinois, January 4th, 1833.

I hereby certify that on the 4th day of August, 1832, John L. Bogardus, of Peoria, filed in this office evidence of his right of preëmption to the south-east fractional quarter of section nine, township eight, north range, eight east of the fourth principal meridian, under the Act of Congress of April 5th, 1832.

SAMUEL ALEXANDER, Register."

That on the 5th day of August, A. D. 1834, the said John L. Bogardus made to Isaac Underhill a deed; (this deed is the same deed considered by the supreme court in the case of Ballance *v.* Frisby et al., 2 Gilm. 141, and in the case of Frink et al. *v.* Darst, 14 Ill. R. 304,) which deed was duly acknowledged and recorded in the office of the recorder of Peoria county

on the 13th day of August, 1834; that said Isaac Underhill, at the time of the execution of said deed, paid the full amount of the purchase-money therein specified; that on the 13th day of July, A. D. 1832, the said John L. Bogardus made, executed, and delivered to Lewis Bigelow and Samuel C. McClure a deed, as follows, to wit:—

" Know all men by these presents, that I, John L. Bogardus, of Peoria, in the county of Peoria, and State of Illinois, in consideration of five thousand dollars to me paid by Lewis Bigelow and Samuel C. McClure, of said Peoria, the receipt whereof is hereby acknowledged, do hereby bargain, grant, sell, and convey unto the said Bigelow and McClure, their heirs and assigns forever, two undivided third parts of all my right, title, and interest in and unto the south-east fractional quarter of section nine, in township eight, north range eight east, in the military tract, in said Illinois, together with two thirds part of the ferry established over the Illinois River at Peoria, at the outlet of Lake Peoria, with the boats, scows, and other crafts belonging to said ferry, and all the implements and apparatus thereunto belonging, to have and to hold the same to the said Bigelow and McClure, their heirs and assigns forever, with all the privileges and appurtenances thereunto belonging; and I do hereby covenant with the said Bigelow and McClure, that if at any time hereafter I shall acquire any further or additional title to the said land, the same shall inure to them in proportion to their interest hereby conveyed to them.  In witness whereof, I, the said John L. Bogardus, have hereunto set my hand and seal this thirteenth day of July, A. D. 1832.  JOHN L. BOGARDUS [seal]." Which said deed was duly proved and recorded in the recorder's office of Peoria county on the 8th day of August, A. D. 1832.

That on the 15th day of November, 1837, the said John L. Bogardus, under his said preëmption right, entered and purchased said land of the United States at their land-office in Quincy, Illinois, and received a certificate of purchase therefor, as follows, to wit:—

" Land-Office, Quincy, Illinois, 15th November, 1837.

It is hereby certified that John L. Bogardus of New York, did this day enter or purchase the south-east fractional quarter of section No. 9, in township No. 8, north of range No. 8, east of the fourth principal meridian, containing $23\frac{93}{100}$ acres, as appears of record in this office.          SAMUEL LEECH, Register."

That the purchase-money for the entry and purchase of sai land was furnished by said Underhill, and said pu chase m ad

with his money. That on the 5th day of January, A. D. 1838, the land in question, before described, was, in due form of law, patented to the said John L. Bogardus, under his preëmption and certificate as aforesaid.

The said plaintiffs showed a regular chain of title to said lot through mesne conveyances from said Bigelow and McClure, and Underhill, as will fully appear by the bill of exceptions. But no question arising on any of the deeds, the chain of title is here omitted.

It was further proved by the plaintiffs, that immediately after the said fractional quarter was laid out into town lots by said Bigelow and Underhill, and they exercised acts of ownership over the said fractional quarter section by actually occupying portions of the same, and by offering the said lots for sale at public auction, and selling many of them to various persons, who went into possession under such sales and purchases, and have notoriously continued such possession and occupation ever since; that said plaintiffs and those under whom they claim title as aforesaid, have been in possession of said lot (until the entry of the defendant thereon on the day mentioned in the declaration) more than ten years last past, and have paid all taxes which have ever been assessed on said lot, and that such possession has been public and notorious, and well known to the defendant; that the said defendant was in the possession of said premises on the day of the service of the declaration in this suit, claiming to hold the same adversely to the said plaintiffs.

On the part of the defendant, and for the purpose of his defence, it was proved that the said John L. Bogardus died on the 2d day of June, 1838; that previous to his death he made a will, which will was duly proved and recorded on the 7th day of July, A. D. 1838; that Mary Ann Bogardus, wife of said John L. Bogardus, was duly appointed executrix in said will, with full power to sell and convey the real estate of the said John L. Bogardus; that she was duly qualified as such executrix under the laws of the State of Illinois; and afterwards, to wit, on the 25th day of September, A. D. 1845, as such executrix, by her deed of that date, conveyed the said fractional quarter section of land to Seth L. Cole.

This was all the evidence in the cause. The court decided that the plaintiffs had not shown a good title to said lot, and that the said deed to Seth L. Cole showed a clear outstanding title.

The plaintiffs assign the following errors: 1. General error, that the court erred in rendering judgment for the defendant. 2. In overruling motion for new trial.

This cause was heard before PETERS, Judge, at November term, 1853, of the Peoria Circuit Court.

E. N. POWELL, and N. H. PURPLE, for appellants.

C. BALLANCE, for appellee.

TREAT, C. J.   First. This court held in the case of Frink *v.* Darst, 14 Ill. 304, that the deed from Bogardus to Underhill only transferred the interest that Bogardus then had in the land; and that it did not operate to pass the title subsequently acquired by him.   Being a mere quitclaim deed without covenants, it could not, on the principles of the common law, operate by way of estoppel to conclude Bogardus from asserting the after acquired title.   As it did not purport to convey an estate in fee-simple absolute, the title afterwards obtained by Bogardus could not, under the provisions of our statute, inure to the use and benefit of Underhill.   That decision was the result of mature consideration; and it expressly determined this to be the legal operation and effect of the deed.   It was, however, made upon the naked instrument, and without reference to a state of facts disclosed in this record.   It now appears, that prior to the date of the deed, Bogardus had established a right of preëmption to the land; and that subsequent to the execution of the deed, he entered the land under this preëmption right with funds furnished by Underhill, and obtained the legal title from the United States.   The question therefore arises, whether these additional circumstances change the legal aspect of the case.

The fact that Bogardus made proof of a preëmption to the satisfaction of the land officers, gave him no title to the land. It merely established a right in him to enter the land at the minimum price.   He had to make the entry and pay the purchase-money, before he could obtain any title whatever.   Until that was done, the title remained exclusively in the United States.   At the date of the deed, the government had not parted with the title.   Bogardus had, therefore, no title to release, and Underhill acquired none under the deed.   As between the parties, Underhill succeeded to the possessory rights of Bogardus.   By the force of our laws, he became entitled to the possession of the land, and might recover the possession from Bogardus by action of ejectment.   He could also retain the possession against third persons, so long as the land continued to be the property of the United States.   But these possessory rights wholly ceased on the entry of the land.   They could not

be enforced against those deducing title from the United States. Bogardus acquired the complete legal title by the entry, and he could then compel Underhill to surrender the possession. He could maintain ejectment against Underhill, because the latter could neither show title in himself, nor an outstanding title in a third person.

The fact that the land was entered with the money of Underhill, does not affect the question of title in this case. This is an action at law, and the legal title must prevail. The court cannot inquire into the equities of the parties. They must be ascertained and adjusted in another forum. Where land is purchased in the name of one person with the funds of another, the legal estate is vested in the former. The latter acquires only an equitable estate, and he must resort to a court of equity to enforce it against the legal title. He cannot assert it in an action of ejectment. It may perhaps be, that a trust resulted in favor of Underhill by the payment of the purchase-money. If so, he and those claiming under him must seek relief in a court of equity. It is only in equity that it can be enforced against the legal estate. The trust results from the payment of the money, and not because of the prior conveyance. The deed only professed to release the present interest of Bogardus in the land, and as he had not at the time either the legal or the equitable estate, Bogardus had, at most, only the right to purchase the land within a specified time at a certain price, and a license to occupy the same until the termination of that right. Whether this right of preëmption was assignable, so as to authorize Underhill to enter the land, is a question which does not arise. The land was not entered in his name, nor in that of the representative or assignee of Bogardus. The entry was made in the name of Bogardus, and the title passed from the United States to him. He had not previously done any act, which operated to transfer the title through him to Underhill. He was not estopped by the deed from asserting title against Underhill, for it contained no covenants, express or implied. He did not undertake to convey an estate in fee, and therefore the after acquired title did not inure to the benefit of Underhill.

In no point of view, can Underhill and those claiming through him assert title under this deed. The cases cited on the argument do not maintain a different doctrine. Delauney *v.* Burnett, 4 Gil. 454, is clearly distinguishable from this case. In that case, the entry was made in the name of " the legal representatives of R. P. Guyard;" and the court decided that the title vested in the grantee of Guyard. The question was to whom the grant was made; in other words, who was the legal

representative of the preëmptor — the heir or grantee.  If this land had been entered in the name of the legal representative or assignee of Bogardus, that case might be applicable.  It might then be inferred from all the circumstances of the case, that the purchase was made by Underhill, and that the government designed to make the grant to him.  The Grand Gulf Railroad *v.* Bryan, 8 S. & M. 234, and Montgomery *v.* Sandusky, 9 Missouri, 714, have no bearing upon the present case. In them, confirmations had been made to the legal representatives of the original claimants of the land; and it was held that the title passed to the grantees of those claimants.  The cases of Stoddard *v.* Chambers, 2 How. U. S. 284, and Marsh *v.* Brooks, 14 Ib. 513, are to the same effect.

Second.  The deed from Bogardus to Bigelow and McClure clearly operates to pass the after acquired title to two thirds of the land.  It contains this provision : " I do hereby covenant with the said Bigelow and McClure, that if at any time hereafter I shall acquire any further or additional title to the said lot of land, the same shall inure to them in proportion to the interest hereby conveyed to them."  This is an express covenant that any title which the grantor shall afterwards receive, shall inure to and be vested in the grantees.  It is a covenant running with the land, and binding on all persons deriving title through the grantor, with notice of the deed.  It concludes them from setting up title against the grantees and their assigns.  It was manifestly the intention of the parties, that the title when obtained from the government should pass to the grantees.  This is apparent from the circumstances of the case.  Bogardus at the time was not the owner of the land, but he expected to acquire the legal estate under a preëmption right.  He sold two thirds of the tract to Bigelow and McClure for the consideration of $5,000, and inserted this covenant in the deed for the express purpose of transferring to them the after acquired title.  The parties contracted with direct reference to such a state of case as has transpired.  This deed was recorded long before the executrix of Bogardus made the conveyance to Cole.  The latter and those claiming under him, had therefore full notice of the deed and the covenant in question, and are bound thereby.

The court erred in finding the issue on the second count in favor of the defendant.  On the evidence, the plaintiffs were entitled to recover two thirds of the premises demanded.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*