JACOB SPAULDING, Respondent,

*vs.*

ANDREW WOOD, Impleaded with ROBERT S. WOOD,
Appellant.

APPEAL FROM CIRCUIT COURT, GRANT COUNTY.

A bill in equity charged that A. R. & S. as partners, went upon government
land and made large improvements, and then A. & R. quit claimed their
right to S. ; afterwards A. obtained title by pre-emption to the land, and S.
by the bill claimed that the title inured to his benefit ; held under such a
state of facts as charged in the bill, neither party could have a right of pre-
emption under the acts of Congress of June 22, 1838, or of Sept. 4, 1841.
The entry and improvements were for the joint interest of the parties, and
not for the exclusive use of either one.

Where S. has no right of pre-emption to lands, but only a right to bid on the
same at public sale, a right common to all the world, he cannot maintain a
bill to impeach the title of W. obtained by pre-emption, nor obtain any
benefit from such title to perfect a title held by himself.

This action was commenced by the plaintiff in the circuit
court of Crawford county. The bill averred that on the 8th of
July 1839, the plaintiff and defendants entered into articles of
copartnership whereby they agreed to engage in the enter-
prise of building a sawmill at the Falls of Black River, and
on the river ; and also to erect and construct such other things
and machinery connected therewith as might be necessary
and proper for the profitable running or working of the mill
and generally to improve the water power there situated ;
Andrew and Robert S. Wood agreeing to furnish or advance
the sum of $500 each, which money was to be laid out and
expended in purchasing mill irons, provisions, etc. ; and Spauld-
ing was to build and erect a saw mill without delay, and to
receive, as a compensation for his services, the sum of $5 per

day, until his wages should amount to the sum of $500, and then each member of said firm was to own one-third of the property or mill, and he was to run said mill for said firm for the sum of $75 per month, and Robert S. and Andrew were each to receive the sum of $30 per month for their labor and attention in assisting in the erection and conducting said mill generally; and that he has in all respects complied with the true intent and meaning of the contract of co-partnership; that they did, in pursuance of said partnership, go to the Falls of Black River, and commenced making improvements at that place on or about the twenty-seventh day of August, 1839, and that they continued to prosecute said work, and did construct, erect, and build a dam of small dimensions on a creek emptying into the river at the Falls, and also a small saw mill, which was all completed on or about the fifteenth day of June, A. D. 1840 ; and after the said mill was completed and put in a working condition, Spaulding and Andrew and Robert S., as co-partners aforesaid, run the same, and cut considerable quantities of lumber; that after they had run said mill for a short time, differences and difficulties arose between them, and on or about the first day of May, in the year of our Lord one thousand eight hundred and forty-one, in order to amicably settle all difficulties so existing, they entered into another contract or agreement in writing, and under seal with your orator, whereby they agreed to sell out the property, and all privileges appertaining thereto, to your orator, on condition that your orator would pay to Andrew and Robert S. $125,000 feet of good merchantable lumber of different descriptions, to be delivered to them, or to their order, at the saw mill on Black River Falls, which lumber was to be paid and delivered as follows: 5,000 feet forthwith, and which was to be deducted out of the last payment of said lumber; said 120,000, aside from said 5,000, was to be paid and delivered at said mill in three equal annual payments—

on the first day of May, in the year 1842, 1843, and 1844; and he agreed to pay to them, or their order, the said amount of lumber, and to give his promissory notes to be paid in lumber, estimating the lumber at twenty dollars per thousand feet, and said notes to draw interest at the rate of twelve per cent. per annum from and after they shall fall due respectively, if they should not be paid at maturity; and that he did give his said promissory notes to them; that he was also to give to them a lien upon said property and premises by mortgage as collateral security for the payment and delivery of said lumber, which he states he did do to secure the payment of all the debts contracted and then unpaid, in the firm name of Wood, Spaulding & Co., or by either of said co-partners on account of said concern, and also of such debts as the said Andrew and Robert S., or either of them had became individually responsible for on account of said concern, and for the use of said company, which indebtedness of said firm, as he states, amounts to the sum of $6,000 or thereabouts; that he has in all things on his part complied with the the terms and conditions of the contract of sale, dated May first, A. D. 1841, and that no sum of money is due thereon, or by reason thereof, but that the same has been fully discharged by him according to the true meaning and intent of the contract; and he states and charges the fact to be, that it was the true meaning and intent of the parties to the contract dated May 1st, 1841, that he, his heirs and assigns, should forever have, hold, possess, occupy and enjoy the said premises with all and singular the hereditaments and appurtenances, and fixtures thereon erected or constructed, and the free, full and exclusive right to all the privileges therewith connected; and particularly the privileges of the exclusive use and enjoyment of said *water power*, without any the least, let, hindrance, molestation or objection from or by the said Andrew Wood and Robert S. Wood, or either of them, or any

one claiming or to claim, by, through, or under them or either of them, at any time whatsoever, and that Spaulding should have the exclusive right and privilege to purchase the lands whereon the improvements were made, and such as were connected therewith, or adjoining thereto, and such as were necessary to go therewith; to the end that said improvements could be profitably used or operated with, as against them, the said Andrew and Robert S., or either of them, whenever the said lands should be offered for sale by the Government of the United States, so that he should thereby acquire the fee simple title to said premises, and he expressly charges that if he had not so understood said last named agreement he should not have become a party thereto, and that the said Andrew and Robert S. Wood then well knew and now know the fact so to be; that the said Andrew and Robert S. Wood, in furtherance of, and so far as they then could, to carry out said contract last named on their part and behalf on the same first day of May, 1841, under their hands and seals made and executed a quit claim deed of the improvements and premises aforesaid; and afterwards, after said deed was acknowledged, they delivered the deed to him.

That said lands not then being surveyed by the United States, no specific or very definite description of the premises could possibly be made, and that therefore the description of said property, as contained in said deed, is in the words following, that is to say: " The claim to the United States lands, mill seat, mill, situated upon the Falls of Black river, in the county of Crawford aforesaid, together with all the materials, privileges and appurtenances to the same belonging, of every name and description whatever."

That said deed also contained language in the words following: " To have and to hold the same and every part thereof, unto him, the said Jacob Spaulding, his heirs, executors, administrators or assigns forever, free and clear from all

claim and demand of us, or either of us." That it is expressed and declared in said deed that the said Andrew and Robert Wood "had remised, released, and forever quit-claimed unto the said Jacob Spaulding, his heirs and assigns, all (their) right, title, interest, claim and demand, both in law and in equity in and to" the property. That he caused the same to be duly recorded in the office of the register of deeds of said county of Crawford. That immediately upon the delivery of said deed, Andrew and Robert S. Wood yielded to him the possession of the property and premises, and that he, from that time to the present, has had and held the possession thereof, and exercised the absolute control over the same, as he alleges he had a right to do, by virtue of his former possession in company with the said Andrew and Robert S. Wood, and of his subsequent purchase thereof from Andrew and Robert S. That he and the said Andrew and Robert S., from the time they first went to the Falls to make improvements, claimed and possessed as partners jointly, the premises and property on both sides of the river, until Andrew and Robert S. sold and delivered over or yielded up their former right and possession to him. That upon making the purchase of the premises and property of Andrew and Robert S., he made, and delivered to them a mortgage upon said premises and property, to secure to them the payment of the purchase money aforesaid, so far as your orator did not at the time pay the same, and to secure them from any damages they might sustain, by reason of his failing to perform his part of said contract of sale, which mortgage was accepted by them. That the lands in and about the Falls of Black river were not fully surveyed by the government of the United States, until some time in the year 1847. That the quarter section of land upon which the improvements aforesaid were made and are now situate, was not put into market by the government of the United States until 1849; that the said

Andrew Wood, before the day appointed for the sale of the hereinafter described quarter section of land, and sometime during the autumn of the year A. D. 1848, and on or about the sixteen day of October, without the knowledge, consent or assent of Spaulding, and in fraud of his rights, repaired to the land office at Mineral Point, in the county of Iowa, and then and there claimed the right to enter the aforesaid quarter section by virtue of a pre-emption right under the act of Congress entitled " an act supplemental to the act entitled an act to grant pre-emption rights to settlers on public lands," approved June twenty-second, eighteen hundred and thirty-eight; and that he, for the purpose of so entering said quarter section, filed his affidavit with the register of said land office, in which affidavit the said Andrew made oath that he entered upon the south-east quarter of section number fifteen in township twenty-one, north of range number four west, in his own right and exclusively for his own benefit, and that he had not directly or indirectly made any agreement or contract in any way or manner, with any person or persons whatever, by which the title which he might acquire from the government of the United States to said land, should inure to the use or benefit of any one except himself, or to convey or transfer the said land, or the title which he might acquire to the same, to any other person or persons whatever, at any subsequent time; and that thereupon Andrew Wood was permitted to, and did, in virtue of such pretended pre-emption right, pay for and enter the aforesaid quarter section, and that after so entering said land, he without delay repaired to the general land office at the city of Washington, in the District of Columbia, and within thirty-seven days after making said entry, obtained a patent for the quarter section of land, in fraud of Spaulding's rights.

And he states and charges, that Andrew Wood never did enter upon or possess the aforesaid quarter section of land,

nor any part thereof, in his own right and exclusively for his own benefit, but that the only entry or possession made or enjoyed by him, was jointly with your orator and the said Robert S. Wood, and that the same was occupied so, as aforesaid, by them, for their joint benefit, until the said Andrew and Robert S. sold out and yielded up their possession to him; since which sale Spaulding has continued to possess, occupy and enjoy the same premises and lands, as his sole property; that all and singular the facts set forth in the affidavit are untrue; that all the improvements are on the quarter section covered by the quit-claim deed; that after Andrew Wood had procured a title to the land, he commenced an action of ejectment against Spaulding, to recover the possession of the quarter section, and that the action was then pending; that the maintenance of this action was contrary to equity; that he had made valuable improvements, &c., to the value of $12,000.

And he then claimed that the title acquired by Andrew Wood, by virtue of his entry, and the acquisition of a patent, ought to inure to the perfection in law of the equitable title of Spaulding, and that the said Andrew Wood ought, by the order or decree of the court, to be compelled to release and convey his legal title so acquired.

The bill then prayed for an injunction and subpœna.

Upon filing this bill, the circuit judge granted an injunction to restrain Wood from prosecuting his action, and from selling the land.

Andrew Wood demurred to this bill, which was over-ruled, and he then put in his answer, in which he set up: That in the spring of 1839, and before he was acquainted with complainant, he went up to the Falls of Black river, the situation mentioned in said bill; that he made and secured a claim at said Falls, for the purpose of thereafter erecting a saw-mill on said river; that he afterwards returned to Quincey, and

then became associated with complainant, before that time a stranger to him, and with Robert S. Wood, with whom this defendant had but a slight acquaintance, in the building of a saw-mill at said Falls; that he believes that in July, 1839, some such contract as set forth in complainant's bill, was actually entered into by the parties, but not having a copy of such contract before him at this time, he calls on the complainant to produce the same; but he denies that the agreement was that either of the partners of this defendant were to own any share in the real estate or land taken up by him; but that their privilege only extended to the use and improvement of the water power.

The answer then denied that Spaulding had complied with the terms of the partnership; but that Wood with other hands and at his own expense had built a sawmill on the creek near the falls, it then confessed the sale of May, 1841, to the complainant, the making of the deed, mortgage and notes, and contract to pay off the debts of the firm of Wood, Spaulding & Co.; but affirms that said Spaulding has violated his contract and has not paid the last payment, secured by one of said notes, nor the interest thereon; and this deponent says, said note and interest are wholly unpaid, nor could any sum be collected by suit, of said complainant, as he is altogether insolvent; that Spaulding has and did again utterly fail to make the payments he was bound to make by said agreement, and which were intended to be secured by said mortgage; and this defendant says, that Spaulding did not pay and settle all of the debts for which said firm was liable or for which this defendant and said Robert S. Wood were liable on account of said firm, but many of the creditors of said firm sued this defendant for the sums due them, in the county of Adams, in Illinois, where he resided; that he settled out of his own funds various judgments obtained by such creditors, they regarding him as the only responsible

person belonging to said firm, or having belonged thereto; and he says, that if they did exchange the firm liabilities for his notes, it was because they considered demands against the complainant worthless, nor did he voluntarily undertake the payment of the firm debts after the delivery of said mortgage; that he was compelled to do so by numerous suits brought against him by the creditors of said firm, involving him in large amounts of damages and costs, and in many cases he gave his individual note to the creditors of said firm for the debts thereof, which said complainant obligated himself to pay in order to avoid or postpone or settle lawsuits.

The answer denied the construction put on the contract of May, 1841, by the bill; also that the mortgage could be foreclosed, so that any benefit could arise out of it, by reason of the title which Spaulding had to the land; that the complainant had allowed the mill to go off, and that Wood had become liable for the building of the new mill on the same premises.

The answer then further admits, that some time in October, 1848, as he lawfully might, and when all hope of receiving any benefit from said complainant was given up, and after this defendant had been quite ruined by the payment of damages and costs and expenses on account of said firm, against which said complainant agreed to indemnify him, he did enter at the land office, in Mineral Point, the south east quarter of section 15, town 21, north of range 4, west, including the mill-site at the Falls of Black River; but this defendant regards as false and scandalous, the allegations in the complainant's bill, that the affidavit made by this defendant to secure said entry was untrue; and says that said complainant maliciously procured this defendant to be indicted for the making of said affidavit in the United States District Court, for Milwaukee, Wisconsin, on the trial of which indictment this defendant was fully acquitted; said complainant intending by means of said proceeding, to destroy and vacate

the entry made by this defendant, in which he wholly failed. It denies that the subject matter of the quit claim deed to said complainant, includes the lands so entered by him, and leaves the same to the construction of the language set forth in the deed. It admits that he commenced, and there is now pending in the circuit · court in Grant county, an action of ejectment, in which he is plaintiff, and said Jacob Spaulding, defendant, for the quarter section of land so entered; but does not admit that any contract with, or conveyance to said complainant made by him, includes said quarter section of land.

This answer was accompanied by a schedule of the debts paid by Wood. amounting to $1200, which was claimed as due from Spaulding to him, with interest.

The cause being at issue, it was tried at the Grant circuit, in October, 1856. The plaintiff read the articles of co-partnership, the deed and agreement to pay the firm debts, and the mortgage made May 1, 1841, also depositions to show that he had paid various debts of the firm; also tending to show that there was no improvements at the falls when the partners went there in the summer of 1839. The defendant showed by the cross interrogatories put to the plaintiffs' witnesses, and by his own witnesses, that the mill built on the creek was gone off. That there were two log cabins at the falls when they first went there, which were built by the order of Andrew Wood, given in the spring before; also the value of the rent, &c., of the property. That he had paid the debts mentioned in his answer; that he had paid the amount he agreed to pay in the formation of the partnership; that Spaulding had been absent from the work; that Spaulding had not paid the last note for 36,666 feet of lumber, due May 1, 1844.

The defendant read the record of a deed from Spaulding to the trustees of the Nauvoo House association, dated December 22, 1842, for the same tract as described in the deed to him from Wood, for the consideration of $12,000.

The circuit judge made the following decision.

This cause having heretofore been brought on to be heard upon the pleadings filed, and the proofs taken therein, and the said pleadings and proofs having been read, and G. L. Frost, Esq., and E. G. Ryan, Esq., of counsel for complainant, and C. Abbott, Esq., and J. G. Knapp, Esq., of counsel for the defendants, having been heard, and the court having duly considered the said pleadings, proofs and arguments, and being now sufficiently advised of, and concerning the same, doth consider, order, adjudge and decree, and it is hereby considered, ordered, adjudged and decreed, that the said complainant, Jacob Spaulding, be and he is hereby entitled to have the title in fee simple acquired from the United States Government by the said Andrew, and the same is hereby decreed and declared to inure to the said Jacob Spaulding, of, in and to such portion of the south-east quarter of section No. 15, in township No. 21, north of range No. 4, west, as will and does include, take in, and embrace the water power situate at, and being on the falls of Black River on said tract of land, and so much land therewith as may be necessary to improve, have and use said water power. And also the land or lands on said quarter section, upon which the actual improvements of the said complainant, and the said defendants, were situate and erected on the first day of May, A. D. 1841, with all of the materials, privileges, and appurtenances to the same belonging.

And it is further ordered, adjudged and decreed, that the said Andrew Wood, as soon as the proper description of the lands hereby intended to be decreed, shall be ascertained by survey, proof and measurment, as hereinafter directed, shall remise, release, and convey to the said complainant, Jacob Spaulding, the said property, by metes and bounds, subject to the approval of this court. And this court not now being sufficiently advised of and concerning the true and proper

description of said lands and premies, it is hereby ordered, adjudged and decreed, that it be referred to the county judge of Jackson county, to take proofs of and from such disinterested witnesses as may be brought before him by either party herein, upon proper notice given, with regard to the proper and accurate description of the said water power, and lands, and appurtenances and improvements.

And it is further ordered, that the said proofs shall be taken and closed, within sixty days from the date hereof, unless otherwise ordered by the court, or agreed by the parties.

It is further ordered, that this court doth reserve the consideration of costs in this suit, and of all further direction, until the said county judge shall have made his report, when either party is to be at liberty to apply to this court as occasion shall require.

By the Court,            M. M. COTHREN, Judge.

The defendant appealed from the first part of this order, which gives Spaulding a portion of the land, embracing the water power, &c.

*J. G. Knapp*, for appellant.

1. The complainant has not made out the averments of his bill which are put at issue; and reviewed the evidence to show this point.

2d. The description of the land in the deed is for a "mill seat and mills." These words do not convey a title to lands in the neighborhood; and the title will not remain longer than the mills shall stand; *Blake vs. Clark*, 6 Greenleaf, 436; *Forbush vs. Lombard*, 13 Wat., 109; *Miller vs. Miller*, 9 Pick., 57; *Dryden vs. Jefferson*, 18 id., 392. It is also limited to the water used by that mill in its then condition, *Ashley vs. Pease*, id., 268.

3. The deed is void for uncertainty, *Massie vs. Watts*, 6

Cranch., 148; *Shipp vs. Miller,* 2 Wheat., 316; *Blessing vs. House,* 3 Gill & John., 290.

4. The deed is a naked quit claim, and an after-acquired title does not inure to the grantee, Rawle on Cov. of title, 406, and cases cited; *Miller vs. Erving,* 6 Cush., 34; *Bell vs. Twilight,* 6 Fos., 401; *Duchess of Kingston's case,* 2 Smith, Lead. Ca., 514; *Pike vs. Calvin,* 29 Maine, 183; *Partridge vs. Patten,* 31 id., 483.

5. Spaulding is estopped to deny the validity of the entry, as he seeks to claim the benefit of the entry. The decision of the land officers is conclusive upon his right to make the entry, and the bill does not aver that Spaulding ever attempted to make an entry for himself, and, finally, he had parted with all his title to the trustees of the Nauvoo House Association.

6. The patent to Wood having been issued upon a pre-emption right, the deed to Spaulding as to that patent was null and void, being made before the entry; act of Congress 29 May, 1830; *Bagnall vs. Broderick,* 13 Peters, 450; *Polk vs. Wendall,* 9 Cranch., 87; *Abbott vs. Bahr,* 3 Chand, 210; *Nichols vs. Nichols,* id., 189; *Cunningham vs. Ashley,* 7 Eng., 310; *Stephens vs. Hays,* 1 Smith's Ind., 177; *Glen vs. Thistle,* 23 Miss., 42; *Brown vs. Poindexter,* S. & M., 597; *Paulding vs. Gimsly,* 10 Mo., 210; *Davenport vs. Farrar,* 1 Scam., 314; *Wells vs. More,* 16 Mo., 478; *Parkinson vs. Bracken,* Wis. Ter. MS., decided 1846.

*C. Abbott,* on the same side, urged the last point; and further insisted that equity never raises any resulting or constructive trust in favor of an agreement made in violation of law, Chit. on Con., 657; id., 692; and cases cited.

*E. G. Ryan,* for the complainant.

It matters not that the mortgage has not been paid. It cannot be set up against an equitable right to a conveyance.

The quit claim deed put the complainant into possession, and there can be no doubt but the defendant held the after-acquired title as the trustee of the plaintiff, and should be decreed to convey to him. The *habendum* has enlarged the grant to such an extent. The words of the deed imply a covenant at common law, 2 Greenleaf's Cruise, vol. 4, 356 to 366, 368 and 369, and cases cited; Platt on Covenants, 556; Story's Eq., § 716. 1211, 1212; Rawle on Covenants for Title, 404, 405.

The entry by pre-emption though charged is not proved, and if it were, it could make no difference with the case. The act of Congress only applied to a sale of the right before entry; *Dillingham vs. Fisher*, decided in this court. If the sale was void the defendant could not declare it void. The United States alone could do that. The fraud was not on the plaintiff, but on the United States; and, therefore, the consequences of the deed will be enforced against Wood.

There was no sale of the right of pre-emption within the meaning of the act of Congress. At the date of the deed all the parties were in possession of the land, and not Wood, in his sole right. He had no right of pre-emption to sell. The deed is a conveyance of a possession and improvements on public lands. This being the case, the pre-emption was a fraud on the rights of the grantee. If he entered it to save his claim for the non-payment of the mortgage; he should be still required to reconvey it, as the trustee of the complainant.

The court is not asked to review the decision of the land officers; but to administer equity between the purchaser and his grantee in relation to this land.

*By the Court,* WHITON, C. J. We regret to be obliged to hold, that upon the facts stated by the the complainant in his bill of complaint, he is not entitled to any relief.

It appears by the bill that the complainant and Andrew Wood and Robert S. Wood agreed to build a saw mill at the Falls of Black River, and in connection therewith to make such other improvements as should be necessary to work the mill and improve the water power at the Falls; that after making certain improvements, as partners and joint owners, difficulties arose between them, which were finally settled by the sale of the improvements to the complainant by the Woods. This sale was evidenced by a deed from the latter to the former, in which the grantors state that they have "remised, released, and forever quit-claimed to the said Spaulding, all our right, title, interest, claim and demand, both in law and in equity, in and to the claims to the United States lands, mill seat, mills, situated upon the Falls of Black river." The bill of complaint states as a reason why a more specific description of the premises was not given in the deed, was that the land was not then surveyed. The bill further states, that immediately upon the delivery of the deed to the complainant, the Woods yielded the possession of the property and premises, and from that time to the time of filing the bill, the complainant had the possession and absolute control of the property. The bill further states that from the time the Woods went to the Falls of the Black river to make improvements, they claimed and possessed, as partners, jointly, the premises and property on both sides of the river, until the delivery of the possession to the complainant. The bill further states, that before the day appointed for the sale of the land, Andrew Wood repaired to the land office at Mineral Point, and entered the land in dispute, by virtue of a pretended pre-emption right, and obtained a patent for the same, in fraud of the rights of the complainant. These are all the allegations of the bill which we deem it necessary to recite. It has not been without a laborious struggle to prevent such a result, that we have been compelled to arrive at the

conclusion that the complainant has no interest in the premises in question, which a court of equity can protect. It appears by the bill that the complainant and the Woods went into the possession of these premises jointly, as partners. Neither of them, therefore, could have a right of pre-emption.

In order to obtain a pre-emption, it was necessary for the applicant to swear, among other things, that he entered upon the land in good faith, to appropriate it to his own exclusive use and benefit, (Acts of Cong., Sept. 4th, 1841 ; id., June 22d, 1838.) Now according to the allegations of the bill of complainant, the complainant went upon and improved the land jointly with the Woods, and for the joint interest ·of all. If, therefore, Andrew Wood should be estopped to set up any right to the land, acquired by his patent, the complainant has not shown himself to be entitled to any. He could not have obtained a title to the land by pre-emption, except by committing perjury. All that he has lost by the fraud of Wood, is the right to bid for the land at public sale—a right common to all the world.

We are, therefore, obliged to hold that the case made by bill is not such as entitles the complainant to any relief. The decree of the court below must be reversed, and the case remanded for further proceedings.

COLE J., *Dissenting.* Having been of counsel for one of the parties in this cause, while it was pending in the circuit court, I felt a great reluctance at participating at all in the hearing and determination of the case in this court, notwithstanding the stipulation filed by the parties, ;consenting that I should do so. For while I honestly endeavored, in the consideration of the cause, to divest my mind of all pre-conceived views, as to the merits of the case, and the rights and obligations of the parties to this suit, I was continually sensible how difficult it was to do this; and I now greatly fear, that

owing to the above circumstance, I may not have examined the various questions involved in the cause, with that free, unbiased judgment, so essential, at all times, in arriving at correct and satisfactory conclusions. And I now feel the embarrassments of my situation the more keenly as I have the misfortune to differ somewhat from some views expressed by my brethren in the opinion delivered by the Chief Justice. But without intending to combat those views, or to fortify and sustain my own by any argument, I deem it proper to state wherein I think the decree of the circuit court erroneous, and the ground upon which I think it ought to be reversed.

In my judgment, that decree is erroneous, in not providing that Spaulding should pay the Appellant, Andrew Wood, the money the latter expended in entering the land, which was decreed by the circuit court to belong in equity to the complainant. It appears to me to be perfectly equitable and right to require Spaulding to pay the amount of the entrace money to Wood, and the decree should have so directed as a condition of the latter's conveying the title acquired by him under his patent to the appellee. It may be said, that since Wood entered the land in fraud upon the laws of Congress relating to pre-emption rights, and by committing perjury, in taking the affidavits required by those laws, that a court of equity, should not even give him the entrance money thus paid by him to acquire this land. Whatever weight there may be in such a view of the case, I do not think it sufficient answer to the objection I have taken to the decree.

I remark further, in explanation of the view I have taken of this cause, that the whole evidence shows most satisfactorily to my mind, that the complainant, Spaulding, and the Woods went into the possession of the premises in dispute *as partners,* while the lands were unsurveyed and belonged to the government of the United States; and I therefore fully agree with my brethren (as I understand them) in holding

that this possession was *for the joint interest of all,* and that neither of the parties, without swearing falsely, and committing a gross fraud upon the pre-emption law, could enter the land as a pre-emptor. As neither of the parties under such a joint possession, was entitled to a pre-emption right upon the land; so I consider it unreasonable to suppose that the parties intended or attempted to purchase, sell and convey such a pre-emption right in the deed given by the Woods to Spaulding. The question very naturally arises, what was intended, and what, in fact, was sold and conveyed by the parties to this deed? Was it the mere right to bid, to the exclusion of the grantors, for the land, at public sale, when it came into market?—a right so intangible, so unsubstantial as not to be the subject of bargain and sale, and which a court of equity cannot protect and secure? Without entering at all into a discussion of these questions, I shall content myself in stating that it seems to me something more was intended to be sold, and in fact was sold, than this right to bid for this land at the public sale. It is very obvious that Spaulding would not have agreed to pay, and would not have paid such a consideration as he has given for the mere right to bid off this land, to the exclusion of the Woods, or either of them. By the deed, the grantees, for a full, adequate and valuable consideration, remised, released and forever quitclaimed to the grantee all of their right, title, interest, claim and demand, both in law and equity, in and to the claims to the United States lands, mill seat, mills, situated upon the Falls of Black river, &c., " to have and to hold the same and every part thereof, unto him, the said Jacob Spaulding, his heirs, executors, administrators, or assigns forever, free and clear from all claim and demand of us, or either of us," &c. From this language, it is very evident that the grantors intended to convey unto their grantee whatever title they might have by virtue of their possession of the land, together

with all their interests in the water power and improvements made thereon, whatever those interests might be. And although it may be difficult to define and accurately determine what interest a settler may have in his possession and improvements upon public lands, made before such lands are surveyed and come into market, even when such possession cannot be the foundation of a pre-emption right, yet it seems to me when such possession is made in good faith, with the intention of buying the land when it comes into market, that it is encouraged by the whole policy of the laws of Congress relating to the settlement and sale of the government lands, and that those laws imply that a real beneficial interest may exist in such claims which (as it appears to me,) the court in the case of *Thredgill vs. Pintard*, 12 How., 24, must have recognized and sustained. Confessedly this is a hard case, one in which a " court will go to the very extreme of equity," to prevent the perpetration of great wrong on the part of the appellant Wood. As already observed for a good and valuable consideration, (a great part of which the testimony shows he has received,) the appellant sold and conveyed to the appellee his interest and possession in certain claims and improvements upon lands belonging to the United States, and gave a deed containing the covenant before cited from the deed. In the very teeth of this deed and its conditions, in fraud of the rights of the appellee, before the land came into market, he repaired to the land office, entered the land by virtue of a pretended pre-emption right, and committed perjury in so doing, obtained his patent, and now attempts to consummate his fraud by recovering possession of the premises in an action of ejectment, upon the strength of his title acquired under his patent. I think a court of equity should say not only that he is estopped from setting up any title under his patent thus obtained, but that he shall not use the courts of justice to go one step further in fraud.