## WILLIAM D. HARDEN, APPELLANT, v. CHARLES W. CULLINS, RESPONDENT.

EFFECT OF QUITCLAIM DEED OF PUBLIC LAND. Though courts have gone a long way to sustain equities where any contract or trust existed in regard to pre-emption claims, none has gone so far as to hold that a quitclaim deed by a person, who afterwards pre-empts and obtains a patent, conveys all the right, title, and interest in and to the land deeded, present and prospective; especially when the pre-emption claim had no existence at the date of the deed.

QUITCLAIM DEED AFFECTS ONLY PRESENT RIGHT. A quitclaim deed can operate only as a release of what title or right the vendor had in the land at its date.

TITLE OF PATENTEE OF PUBLIC LAND UNAFFECTED BY HIS PREVIOUS QUITCLAIM DEED. Where Cameron and Cullins occupied unsurveyed public land in common, and Cameron made a quitclaim deed of all his right, title, and interest therein to Cullins, but afterwards forcibly drove Cullins off the land, and himself pre-empted and obtained a patent to a portion of it—Cullins, in the meanwhile, taking no measures to pre-empt: *Held*, in an action to quiet the title of the land patented as against Cullins, that he had no claim to such land which equity could be called upon to enforce.

APPEAL from the District Court of the First Judicial District, Storey County.

This was an action to quiet the title of a tract of one hundred and eighteen acres of land in Washoe County. The suit was originally commenced in that county, but afterwards transferred to Storey. The judgment of the court below

was to the effect that defendant was the owner of so much of the land claimed as lay within the boundaries of the Steamboat Springs Ranch, and the plaintiff the owner of the balance; denying the prayer of the complaint as to the former and granting it as to the latter. The plaintiff appealed.

*Williams & Bixler*, for Appellant.

I.   The defendant stands in no privity with the United States, and hence can not question the validity of the patent, or claim that it inures to his benefit.   *Dunn* v. *Schneider*, 20 Wis. 509; *Mahoney* v. *Van Winkle*, 33 Cal. 458; *Tyler* v. *Green*, 28 Cal. 408: *Doll* v. *Meador*, 16 Cal. 324; *Kile* v. *Tubbs*, 23 Cal. 442; 29 Cal. 310; 27 Cal. 484; 2 Nev. 280; 17 Cal. 58; 33 Cal. 74; 17 Cal. 60; 32 Mo. 28; 28 Cal. 501; 39 Mo. 595.

II.   The conveyance made by Cameron to defendant in 1863 was merely a quitclaim deed, and did not operate to vest the subsequently acquired title.   It only passed such interest as the grantor had at the time it was made and which he could lawfully convey.   *Gee* v. *Moore*, 14 Cal. 472; *Morrison* v. *Wilson*, 30 Cal. 344; *Cadiz* v. *Majors*, 33 Cal. 289; 37 Cal. 471; 1 Cow. 613; 14 Johns. 194; 39 Mo. 566; 4 Mass. 688; 18 Cal. 465; 25 Cal. 154; 14 Cal. 613.

III.   At the time Cameron made his deed to defendant he had no pre-emption right.   The land had not then been surveyed by the government or declared open for entry. Nor does it appear that he then was possessed of the qualifications of pre-emptioner. ` *Quoad* the government he was a mere intruder or trespasser.   Hence his deed conveyed nothing so far as the government or its grantee is concerned, and as between Cameron and defendant only the naked possession.   *Kile* v. *Tubbs*, 23 Cal. 442; *Page* v. *Hobbs*, 27 Cal. 286; *Doll* v. *Meador*, 16 Cal. 331; *Vansickle* v. *Haines*, 7 Nev. 249.

IV.   To give the defendant any standing in court he must have shown that he was the true owner of the superior equitable title to the land, and could have demanded of the officers

of the government that the patent be issued to him.   The
inchoate pre-emption right commenced with the entry of
Cameron, after the land was surveyed.   That right was a
right to obtain the fee and culminated in the patent.   The
defendant, by Cameron's deed to him, obtained no equitable
right as to the fee, either as against the government or Cam-
eron.   Having but a bare trespasser's right, there was noth-
ing in the case upon which a trust could be predicated.   To
declare a trust under the circumstances would be a violation
of the spirit and policy of the pre-emption laws.   It would
have an effect of vesting the fee of the public lands in par-
ties not possessing a single qualification, or complying with
a single one of the provisions of the pre-emption laws.

V.   Even if Cameron, when he made the deed of July 27,
1863, had expressly agreed to pre-empt the land, get the
patent and convey to defendant, the agreement would have
been void by the very terms of the pre-emption laws.   What
could not be done directly because against the policy of the
law or contrary to statute, cannot be accomplished indirectly.
A court of equity can recognize no such trust.   See Hill on
Trustees, * 45, 70; 1 Brightly's Dig. 473; *Leggett* v. *Dubois,*
5 Paige, 117; *Phillips* v. *Hammond,* 2 W. C. C. 441.

*Thomas E. Haydon,* for Respondent.

No brief on file.

By the Court, WHITMAN, J. :.

This case turns upon the findings and conclusions of the
district judge.   Appellant claims that the conclusions have
no sound basis in the facts found.   Substantially, these are :
That appellant's grantor, in whose place, for all practical
purpose of this action, appellant stands, was in July, 1863,
tenant in common with respondent of four hundred and
twenty-five acres of the public unsurveyed lands of the
United States; and then and there so being, made, executed,
and delivered to respondent a quitclaim deed for his interest
therein.   By consent, he was allowed to remain in posses-

sion until February, 1864, when by force and threats he drove respondent out of possession, and in the succeeding month made his declaratory statement of pre-emption in the proper office, and subsequently obtained a patent for one hundred and eighteen acres of land, a portion of which—what does not appear—is included in the calls of the quitclaim deed before mentioned.

It is sought in this suit to quiet title to the land described in the patent. The district court has decided that no such right exists, as to the land within the calls of the deed; hence this appeal. It is held, "That the conveyance made by said J. W. Cameron to the defendant on the 24th day of July, 1863, operated to convey to the defendant [respondent] title in fee simple absolute to the land described therein, known as the Steamboat Ranch, and that the title afterwards acquired by said J. W. Cameron by virtue of said patent to the land claimed by the plaintiff, [appellant] so far as the same lies within the boundaries of said Steamboat Ranch, inured to the benefit of defendant, [respondent] and said Cameron's title by pre-emption and patent to the land described in plaintiff's [appellant's] complaint, immediately upon the purchase by said Cameron from the government, passed to said defendant the legal estate in so much of said land pre-empted and purchased by said Cameron, as lay within the boundaries of said Steamboat Ranch, conveyed by said Cameron to defendant [respondent] as aforesaid by virtue of the deed from said Cameron to said defendant," [respondent.]

Counsel attempts to support this position upon the basis mainly of a fraud, claimed to have been perpetrated upon respondent, which he urges should and does cause the patent to inure to his benefit. It is claimed that the deed spoken of carried the fee simple title to the land therein described, and reference is made to a decision of Commissioner Hendricks, of the general land office, in support of such assumption. It was there ruled with regard to what is called an unqualified quitclaim deed, executed ten months before the entry of the land called for therein, that it was in

law an "agreement" or "contract," by which the title which Harbach [pre-emptioner] might thereafter acquire from the government of the United States "should inure in whole or in part" to the benefit of another person. At the time of the conveyance his title to the land, if he had any, was merely inchoate. It was to be perfected at a future time. By giving an unqualified quitclaim deed he conveyed all his right, title, and interest in and to the land deeded, *present* and *prospective:* while, therefore, the title of the vendees could only have been perfected, so far as the rest of the world was concerned, upon the perfection of Harbach's title, yet so far as he [Harbach] was concerned their title was perfect from the day of the execution of the deed. It follows as a consequence that, as they never redeeded to Harbach, the "agreement" or "contract" made in January, 1857, between the vendor and vendees aforesaid, was such a one as, had the fraud been consummated, would have caused the title which Harbach might have acquired by patent from the government to have inured "in whole or in part to the benefit of other persons besides himself." Lester Land Laws, Dec. 532.

This opinion holds substantially in accordance with other decisions of the office that the transfer of a pre-emption claim or right is void. Lester, Decs. 424, 429, 616. Such also is the ruling of some courts. *Camp* v. *Smith,* 2 Minn. 155; *Glen* v. *Thistle,* 23 Miss. 42; *Craig* v. *Tappin,* 2 Sand. Ch. 78. Yet while thus holding, the commissioner draws the somewhat singular conclusion that on concealment of the fraud a patent issued to the vendor would inure to the benefit of the vendee in a void conveyance.

Courts have gone a long way to sustain equities, or supposed equities, where any contract or trust existed in regard to pre-emption claims, but never quite so far as the decision quoted, or to hold that a quitclaim deed conveyed all right, title, and interest in and to the land deeded, present and prospective, especially when, as in the case cited, the pre-emption claim had no existence at the date of the instrument.

The doctrine of the equitable rulings on this subject may be admitted in its broadest extent, and yet will not include this case on the facts. There were two parties, Cameron and Cullins, tenants in common of a tract of four hundred and twenty-five acres of unsurveyed land belonging to the United States. There was then no right of pre-emption existing in either, supposing them both competent to pre-empt, which no where in the record appears, because the land was not in the required condition for the exercise of any such right. Had the land been surveyed and open to pre-emption, there could have existed no common or joint right of pre-emption, (*Spalding* v. *Wood*, 8 Wis. 195,) and it would seem paradoxical to hold, that nothing could be rendered something by the release of either to the other. The occupancy of these parties was that peculiar kind of right, based solely on possession, recognized generally for temporary purposes by the legislatures of territories and new states, any interference with which gives a right of action for the recovery of possession, but from which originates no right or inception of right against the paramount title of the United States: that can only arise in the case of the occupancy by one qualified to pre-empt, of such portion of the unsurveyed lands of the United States as, when surveyed and offered, would constitute a pre-emptive division or subdivision. The license expressed or implied of the government on the one hand and the intention of the settler on the other, each and both of which are presumed to exist in such case, here have no being.

Suppose, however, a right of pre-emption to exist in each of these parties, to what portion of the land shall it be applied? Shall it be said that by this deed Cameron forever barred himself of any right to pre-empt any portion of the land? That would be, to say the least, a harsh doctrine, and one without any benefit to Cullins; for as soon as the land was surveyed his possession must yield, save for one hundred and sixty acres, to any person able and desirous to pre-empt.

But if this case is viewed in a stronger light than the facts

warrant, still it can not be sustained as claimed. The quit-claim deed could operate only as a release of what title or right the vendor had in the land at its date. Suppose that to have been a pre-emption claim or a present right to pre-empt, still even that would not cause the patent issued to the vendor to inure to the benefit of the vendee; and in this re-spect the opinion of Commissioner Hendricks must yield to the decided cases. *Frink et al.* v. *Darst,* 14 Ill. 304; *Phelps et al.* v. *Kellogg,* 15 Ill. 131. The first of these cited cases is so full upon nearly all the points made in this case that it is specially referred to and adopted, as it is impossible to quote from it satisfactorily without transferring it entire. In the latter case it is said, and could not be more aptly expressed to cover this case under the facts now assumed, which are stronger than the reality: "The fact that Bogardus made proof of a pre-emption to the satisfaction of the land officers gave him no title to the land. It merely established a right in him to enter the land at the minimum price. He had to make the entry and pay the purchase-money before he could obtain any title whatever. Until that was done the title remained exclusively in the United States. At the date of the deed the government had not parted with the title. Bogardus had, therefore, no title to release, and Underhill acquired none under the deed. As between the parties, Underhill succeeded to the possessory rights of Bogardus. By the force of our laws he became entitled to the pos-session of the land, and might recover the possession from Bogardus by action of ejectment. He could also retain the possession against third persons, so long as the land con-tinued to be the property of the United States. But these possessory rights wholly ceased on the entry of the land. They could not be enforced against those deducing title from the United States. Bogardus acquired the complete legal title by the entry, and he could then compel Underhill to surrender the possession. He could maintain ejectment against Underhill, because the latter could neither show title in himself, nor an outstanding title in a third person. The fact that the land was entered with the money of

Underhill does not affect the question of title in this case. This is an action at law and the legal title must prevail. The court cannot inquire into the equities of the parties. They must be ascertained and adjusted in another forum. Where land is purchased in the name of one person with the funds of another, the legal estate is vested in the former. The latter acquires only an equitable estate, and he must resort to a court of equity to enforce it against the legal title. He cannot assert it in an action of ejectment. It may perhaps be, that a trust resulted in favor of Underhill by the payment of the purchase-money. If so, he and those claiming under him must seek relief in a court of equity. It is only in equity that it can be enforced against the legal estate. The trust results from the payment of the money and not because of the prior conveyance. The deed only professed to release the present interest of Bogardus in the land; and as he had not at the time either the legal or the equitable estate, Bogardus had, at most, only the right to purchase the land within a specified time at a certain price, and a license to occupy the same until the termination of that right. Whether this right of pre-emption was assignable, so as to authorize Underhill to enter the land, is a question which does not arise. The land was not entered in his name, nor in that of the representative or assignee of Bogardus. The entry was made in the name of Bogardus and the title passed from the United States to him. He had not previously done any act which operated to transfer the title through him to Underhill. He was not estopped by the deed from asserting title against Underhill, for it contained no covenants express or implied. He did not undertake to convey an estate in fee, and therefore the after acquired title did not inure to the benefit of Underhill." 15 Ill. 135–6.

Some stress is laid in the finding of the court upon the fact that force was used against Cullins and that he was put in fear, and so driven from possession. This can not avail him in this action. Had he the capacity, and had he desired to pre-empt that portion of the land described in the patent,

which was within the calls of his deed from Cameron, it would have been sufficient excuse before the land officers for non-occupancy, or non-improvement, to have shown that he was excluded by force or deterred by fear. Lester, Decs. 434, 483, 487, 500. He appears, however, to have made no movement in the land office, either affirmative or defensive; in fact, to have done nothing to preserve his rights in the property, if any he had, except to seek, without any apparent diligence in that attempt even, to enforce in the local courts his right of possession.

From what has been said it follows that there was no fraud on Cameron's part as claimed; and that Cullins has been deprived of no right to the property in dispute, and has no present claim to the title thereto which equity can be called upon to enforce. The decree of the district court must be so modified as to conform to the prayer of the complaint.

It is so ordered.

GARBER, J., did not participate in the foregoing decision.