Frink et al. *v.* Darst.

·FRANCIS BURNAP, in person, *contrà.*

JOHN FRINK et al., Plaintiffs in Error, *v.* JACOB DARST, Defendant in Error.

ERROR TO PEORIA.

A deed which grants, sells, and conveys to A. B. all the right, title, and interest in and unto certain described lands, which the vendor has, to have and to hold to him, his heirs and assigns, forever; with all the privileges and appurtenances thereunto belonging; will not vest a subsequently acquired title by the releasor in the releasee, if the former had no interest in the land at the time the deed was executed.

An estate in "fee-simple absolute" means a perfect title; and the seventh section of chapter twenty-four of the Revised Statutes, entitled "Conveyances," has application only to titles of this character.

The case of Frisby *v.* Ballance, 2 Gilman, 144, overruled.

THIS was an action of ejectment brought by Frink & Walker against Darst to recover possession of certain land. Plea, not

guilty. The cause was tried by the court, KELLOGG, Judge, presiding, at May term, 1852, of the Peoria Circuit Court. The judgment was for Darst. Frink & Walker sue out this writ of error.

JOHN FRINK, for plaintiffs in error.

N. H. PURPLE, for defendant in error.

TRUMBULL, J.* The only question involved in this case is the effect to be given to, and whether a subsequently acquired title passes by, the following deed, to wit: "Know all men by these presents, that I, John L. Bogardus, of Peoria, in the county of Peoria and State of Illinois, in consideration of one thousand and fifty dollars to me in hand paid by Isaac Underhill, of said Peoria, the receipt whereof I do hereby acknowledge, do hereby grant, sell, and convey unto the said Underhill, all my right and interest in and unto the south-east fractional quarter of section nine in township eight north, range eight east of the fourth principal meridian in said Illinois, and also in and unto the ferry established across the Illinois River in said Peoria, together with all the boats and other implements thereunto belonging; to have and to hold the same to the said Underhill, his heirs and assigns forever, with all the privileges and appurtenances thereunto belonging. In witness whereof, I have hereunto set my hand and seal, this fifth day of August, A. D. 1834.

Signed        JOHN L. BOGARDUS. [L. S.]"

To determine the effect to be given to this deed, we must ascertain its character. Manifestly it is nothing more than an ordinary quitclaim deed, conveying whatever interest the releasor had in the premises at the time. This is the plain, common sense view of the instrument. It purports to convey nothing more than the interest which Bogardus then had in the land. If he had a perfect title the instrument was sufficient to transfer it; if he had no title and no interest in the land, clearly none passed by the deed; for it only professes to transfer his interest, whatever it was. Such instruments are common in this State, and if we are to gather the intention of parties from the language used, and from what we believe to be the common

---

* This case was argued at the preceding term, and this opinion, owing to the illness of Judge Trumbull, was the only one delivered by him at the present term.

26 *

understanding of both those who execute and those who receive them, they are never designed to transfer any thing more than the interest of the grantor at that time, be it more or less, or nothing at all.

Such being the natural import of the language used, we will now inquire, whether there is any thing in the law to change its meaning. The deed contains no express covenants of any character, nor does it contain words from which any can be implied.

The words " grant, bargain, sell," are not in it; and therefore the statute, which adjudges those words to be an express covenant of certain facts, is not applicable. 5 Alabama, 386 ; Whitehall *v.* Gotwall, 3 Penn. Rep. 323.

It was insisted on the argument that the quitclaim by Bogardus to Underhill, although the former had no title at the time, created a use or trust in favor of the latter, which the statute of uses made effectual in him whenever Bogardus acquired the title. To sustain this position the 2d section of the act concerning conveyances, R. S. 1833, p. 129, as also several authorities, were referred to. The statute and the cases to which reference was made, have no application to this case. The statute makes effectual a deed or release as against the grantor or releasor, and all others claiming an interest in the premises granted or released to the use of the grantor or releasor, at the time the deed or release was made. It by no means declares that a deed or release of his interest, by a person having no title, should operate to vest in the grantee or releasee a perfect title, in case the grantor or releasor should ever afterwards obtain one.

The case of Jackson *v.* Fish, 10 Johns. 456, was this : A soldier in the service of the United States, entitled to a donation of land for his services, transferred his claim to the same before receiving a patent therefor by a deed of quitclaim or release; and the court held, that when the patent issued it was for the benefit of the releasee. This case was doubtless rightly decided, but it has no analogy to the one at bar. The soldier, at the time he executed the quitclaim deed had a claim to a tract of land from the government, and most undoubtedly, when that claim was afterwards perfected by the issuing of a patent, it was for the benefit of him to whom the claim had been transferred; but there is no pretence in the record before us, that Bogardus, at the time he executed the quitclaim deed to Underhill, had any claim to the land in question, or to any land which was the foundation of the patent that afterwards issued.

The cases referred to in the Massachusetts Reports are generally cases where the releasor had the legal title at the time

the release was executed; but it was made ineffectual by reason of the technical objection that the releasee was not in possession at the time. In such cases, the courts, in order to give effect to the clear intention of the parties, have held that such releases containing covenants of warranty, would amount to a covenant to stand seized to the use of the releasee. Pray v. Pierce, 7 Mass. 381 ; Russell v. Coffin, 8 Pick. 153.

If the releasor has no interest at the time, then nothing passes by the deed, and it can only operate as an estoppel when the deed contains covenants express or implied which give it that effect.

With the single exception of the decision in our own reports hereafter to be noticed, no case has been referred to, and none, I apprehend, can be found, in which a release or simple quit-claim deed, made by one having no interest at the time, containing no covenants either express or implied, and professing to convey only such interest as the releasor had, was held effectual to vest a subsequently acquired title by the releasor in the releasee, either upon the principle of estoppel, that the subsequent title is to be held as acquired for the use of the releasee, or upon any other principle. On the contrary, the books are full of cases in which it is held that by a release or quitclaim deed of this character, no right passes but the right which the releasor has at the time of the release made. Co. Lit. § 446, p. 265, a. b. ; Bogy v. Shoab, 13 Missouri, 366 ; Dart v. Dart, 7 Connecticut, 250 ; McCrakin v. Wright, 14 Johns. 193 ; Jackson v. Winslow, 9 Cowen, 18 ; Jackson v. Peck, 4 Wend. 305 ; 4 Cruise's Dig. tit. 32, Deed, ch. 6, § 38 ; Jackson v. Hubble, 1 Cowen, 613 ; Right v. Bucknell, 2 Barn. & Ad. 278 ; Allen v. Holton, 20 Pick. 458 ; Kinsman v. Loomis, 11 Ohio, 47.

The release or quitclaim given by Bogardus not containing a covenant of any character, the authorities already cited settle the question, that it cannot operate by way of estoppel to prevent him or those claiming under him from asserting a subsequently acquired title.

Reference has been made to the *habendum* clause in the deed under consideration, for the purpose of showing that an estate in fee would have passed by the deed, if Bogardus had at the time possessed such an estate. This is true, but the *habendum* cannot be made to effect the conveyance of a thing not mentioned in the premises of the deed ; nor can it transform a deed, purporting in the premises to convey only the interest of the grantor, into a conveyance of the fee-simple absolute.

It is said in Cruise's Dig. vol. 4, tit. 32, Deed, ch. 21, § 73 : " Nothing can be limited in the *habendum* of a deed, which has

not been given in the premises; because the premises being the part of the deed in which the thing is granted, it follows that the *habendum*, which is only used for the purpose of limiting the certainty of the estate, cannot increase the gift; for in that case the grantee would in fact take a thing which was never given to him."

If this is the character and office of the *habendum*, as all the elementary writers and reported cases clearly show, it is most manifest that it cannot be used to convert a release or quitclaim of a party's interest in land, into a conveyance of the fee-simple absolute, when the party has no such interest to convey, and in fact no interest at all.

It has been insisted that the character of the deed under consideration is changed by the seventh section of an act concerning conveyances of real property, R. S. of 1833, p. 131; and that by virtue of that section of the statute, the subsequent title acquired by Bogardus enured to the benefit of his grantee in the quitclaim deed.

That section of the statute is in these words: "If any person shall sell or convey to another, by deed or conveyance, purporting to convey an estate in fee-simple absolute, in any tract of land or real estate, lying and being in this State, not then being possessed of the legal title or interest therein at the time of the sale and conveyance, but after such sale and conveyance, the vendor shall become possessed of, and confirmed in the legal estate, to the land or real estate so sold and conveyed, it shall be taken and held to be in trust, and for the use of the grantee or vendee; and the conveyance aforesaid shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest, at the time of said sale or conveyance."

It would seem to be a sufficient answer to the argument based upon this statute, to say that the deed of Bogardus does not purport to convey an estate in fee-simple absolute. If it does purport to convey such an estate, it may well be asked, How could a deed be framed that would purport to convey a less estate?

The language of the deed is: "I do hereby grant, sell, and convey unto the said Underhill, all my right and interest in and unto," and then follows the description of the land. The deed only professes to convey such interest as the vendor had in the premises, be that interest more or less, or nothing at all; and to construe it as purporting to convey any thing else, is a perversion of its terms.

An estate in fee-simple absolute means a perfect title. It "is the entire and absolute interest and property in the land; from

which it follows that no one can have a greater estate." 1 Cruise's Dig. tit. Estate in Fee-simple, § 44.

It is only to deeds purporting to convey an estate of this character that the statute has any application.

The Supreme Court of Missouri, in the case of Bogy *v.* Shoab, already referred to, have placed a construction upon a statute of that State which is precisely similar to ours; and the reasoning of the judge who delivered the opinion, is so apt and conclusive, that we are disposed to adopt it, as containing a proper exposition of our act also. He says: "It then depends upon the character of the deed, whether it is to be affected by our statute. It must be a conveyance purporting to pass the fee-simple absolute. This language is not certainly used in a technical sense. The term fee-simple is known at the common law as one which defines the quantity of the estate. It is used in contradistinction from a fee-tail, a life-estate, or a term of years. It is evidently not employed in this sense in this provision of the act. It was surely not intended, that a quitclaim deed, although the deed uses language to pass the fee, and not any smaller estate, would, therefore, pass a new title, not belonging to the grantor when he makes the deed. It was hardly intended to apply to a deed conveying all right, title, and interest of the grantor. Such a deed will, undoubtedly, pass the land itself, if the grantor has an estate therein at the time of the conveyance, but it passes no estate which was not then possessed.

"Nor would it be in accordance with the manifest intent of such conveyance that after acquired titles should pass. So where a party had a vested interest, and also a contingent remainder in lands, and conveyed 'all his right, title, and interest,' the deed was held only to convey his vested interest, although, in this case, the deed contained a general warranty. The warranty was held to be only coextensive with the grant, and therefore, not estopping the grantor from claiming the contingent interest when it vested. Pelletreau *v.* Jackson, 11 Wend. 110.

"A deed, purporting to convey a fee-simple absolute is not then, in my opinion, a deed which merely conveys something more than a fee-tail, or life-estate, or term of years. The statute intended something more than this. The term 'absolute' gives a clue to the meaning to the whole phrase, which, I think, is drawn from common usage, and not from the technical phraseology of law writers. Every man unlearned in the law understands what a deed conveying a fee-simple absolute is. They understand it, as I humbly apprehend, to be a deed which purports or professes to convey an indefeasible title; not a quit-

claim deed, not a deed merely transferring the grantor's interest, be it more or less; but a deed conveying the land itself, and professing to convey it in such a manner that the grantee is not to be disturbed in his possession by any one. It may be, then, that our statute was intended to settle a question which had been much discussed, and about which there was certainly great conflict of opinion; whether a general warranty would operate to transfer a subsequently acquired legal title. It undoubtedly settles this question in the affirmative, and, I think, it goes further. It puts the whole question upon principles of sound sense and strict justice. It does not limit its operation to deeds containing covenants of general warranty, but it extends to every deed which purports to convey a fee-simple absolute, whether it contains a general warranty or not. It is easy to imagine numerous cases in which there are conveyances obviously intended, and purporting to convey absolute titles, but which omit any covenants of warranty. It does not reach, and ought not to apply to a deed, when the grantor expressly guards against such inference, by inserting a special warranty against his own acts, and those claiming under him."

We have considered this case more at length than we should have done, but for the decision of this court in the case of Frisby *v.* Ballance, 2 Gilm. 141, in which a different construction was put upon the statute and the deed under consideration from the one which we now feel constrained to adopt. After the fullest consideration, we are clearly satisfied that the decision then made was erroneous. The authorities referred to in the opinion do not sustain it, nor have we been able to find any which do. The decision, it is understood, has never given satisfaction to the bar, or been considered as finally settling the effect to be given to a quitclaim deed under our statute.

It is highly important that the decisions of the court affecting the right to property should be uniform and stable; but cases will sometimes occur in the decisions of the most enlightened judges where the settled rules and reasons of the law have been departed from, and, in such cases, it becomes the duty of the court, before the error has been sanctioned by repeated decisions, to embrace the first opportunity to pronounce the law as it is. A solitary decision of recent date has never been held to change the law in any case; and especially should it not have that effect, where to adhere to it would be fraught with far greater public injustice than could possibly arise from overruling it in the particular case. Deeds of this character are common in Illinois, and the titles of hundreds, contrary, as we are satisfied, to the understanding of parties at the time they were

executed, and to the opinions of the legal profession, will be unsettled, if the decision in the 2 Gilm. is to stand as the law.

Although it is a delicate matter for a court to overrule one of its former decisions, settling the liability of a party or a right of property, yet the law-books furnish many instances in which it has been done, when the first decision was manifestly erroneous, and calculated to work injustice.

The general rule is thus stated in the case of Bowers *v.* Green, 1 Scam. 43 : " The maxim, *stare decisis,* is one of great importance in the administration of justice, and ought not to be departed from for slight or trivial causes; yet this rule has never been carried so far as to preclude courts from investigating former decisions, when the question has not undergone repeated examination, and become well settled." In the case of Shields *v.* Perkins, 2 Bibb, 230, the court, in considering the question before them, say : " This doctrine is not founded upon a mere rule of practice, changeable at the pleasure of the courts, but upon the solid basis of justice, and vitally and essentially affects the rights and interests of defendants." The court then proceed to overrule a former decision of the same court, upon the same question, made in the case of Caldwell *v.* Price, Hard. Rep. 69, and conclude their opinion as follows : " For our own convenience, as well as for the sake of uniformity of decision, we are always disposed to follow the precedents which our predecessors have given us ; but where in those precedents we find, as will be always found in the adjudications of the most vigilant and enlightened judges, occasional aberrations from the settled rules and reasons of the law, we feel it our duty not to depart from them. A solitary decision has never been held to change the law in any case, and much less ought it to have that effect in a case like the present, where the rule is so well calculated for the attainment of justice, and so firmly established by an uniform train of uncontroverted authorities."

The Supreme Court of Ohio, in the case of Chesnut *v.* Shane, 16 Ohio, 599, held the acknowledgment of a deed by a married woman sufficient, and the deed valid to pass her estate, overruling a former decision of the same court, in the case of Connel *v.* Connel, 6 Ohio, 358. The same case also holds valid a curative act of the legislature of Ohio, giving effect to deeds defectively acknowledged, thereby overruling two former decisions of the same court which had declared the act void.

The Supreme Court of Tennessee, in 1825, put a construction upon their statute of limitations, in reference to a peaceable possession of land for seven years, which must have had the effect to divest many titles acquired upon the faith of their

former decisions, made in 1815, which were overruled; and what is more, the Supreme Court of the United States followed that of Tennessee in their change of construction of the act. Hickman *v.* Garther, 2 Yerger's Rep. 200; Green *v.* Neal, 6 Peters, 291.

The courts of New York have at different times adopted different rules, materially affecting the rights and liabilities of parties, as to the effect which is to be given to an indorsement of his name by a person other than the payee of a promissory note on the back of the same. Hall *v.* Newcomb, 3 Hill, 233; same case in court of errors, 7 Hill, 416.

Many other cases might be cited, showing that courts do sometimes overrule their former decisions, even in cases affecting the rights and liabilities of parties; but we forbear to swell this opinion by a reference to them.

It is the unanimous opinion of the court, that the quitclaim deed from Bogardus to Underhill is insufficient to vest in the latter a title acquired by Bogardus subsequent to the execution of the deed.

The judgment of the circuit court is therefore reversed, and the cause remanded for further proceedings.

*Judgment reversed.*