2015 IL App. (1st) 141157
No. 1-14-1157

FIRST DIVISION
May 18, 2015

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| TODD BAKER, RICHARD KIRK CANNON, MERYL SQUIRES CANNON, and WANDA DZIOPEK, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) ) | 13 CH 20057 |
| v. | ) ) | |
| THE FOREST PRESERVE DISTRICT OF COOK COUNTY, and BMO HARRIS BANK, N.A., | ) ) ) | Honorable Thomas R. Allen, Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE CONNORS delivered the judgment of the court, with opinion
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal, filed by taxpayers of Cook County, concerns the statutory authority of the Forest Preserve District of Cook County (FPD) to acquire property in foreclosure by purchasing the mortgage note and subsequently bidding on the property at the foreclosure sale.

¶ 2                                    I. BACKGROUND

¶ 3         A. Foreclosure Action: BMO Harris Bank *et al*. v. Royalty Properties, LLC

¶ 4     In December 2006, Cannon Squires Properties, LLC, and Royalty Properties, LLC, received a loan from Amcore Bank (Amcore) to purchase Horizon Farms (the property or Horizon Farms), and the two companies mortgaged the property in return for the loan. Richard

Kirk Cannon and Meryl Squires Cannon, members of the companies, guaranteed the loan. When the loan matured in May 2009, the entire principal and interest became due and there were also unpaid taxes on the property. Amcore began foreclosure proceedings. When Amcore failed the following year, BMO Harris (BMO) assumed the deposits and purchased all of the assets of Amcore, including the Horizon Farms mortgage and note.

¶ 5     On March 19, 2013, the Forest Preserve District Board (Board) approved FPD's purchase of the Horizon Farm's note from BMO. BMO and FPD executed an assignment and assumption agreement. On June 27, 2013, FPD paid BMO $14 million for the note and to become the assignee of the Horizon Farms mortgage.

¶ 6     Shortly thereafter, defendants filed a motion to substitute plaintiff, FPD for BMO, in the foreclosure proceedings pursuant to section 2-1008 of the Code of Civil Procedure (735 ILCS 5/2-1008(a) (West 2012)) as FPD was the present holder and owner of the assignment and assumption agreement relating to Horizon Farms. The court granted the motion to substitute plaintiff.

¶ 7     On August 30, 2013, a judgment of foreclosure was entered in favor of FPD.

¶ 8     In October 2013, the Board authorized FPD's participation in the foreclosure sale of Horizon Farms. On October 18, 2013, FPD participated in the foreclosure sale and credit bid for the property. FPD was the highest bidder and received the certificate of sale for the property. The sale was confirmed on May 5, 2014, and FPD acquired title to the property on May 16, 2014, upon receipt of the sheriff's deed.

¶ 9                          B. Instant Taxpayer Suit

¶ 10    Plaintiffs, Richard Kirk Cannon, Meryl Squires Cannon, and Todd Baker,[1] filed their complaint in this action (taxpayer suit) against FPD, the Board,[2] and BMO. This taxpayer suit was filed on August 30, 2013, which was the same day the foreclosure judgment was entered in favor of FPD in the foreclosure action. All plaintiffs allege that they are Cook County taxpayers.

¶ 11    The crux of plaintiffs' complaint is that FPD's purchase of the mortgage note from BMO and then its participation in the foreclosure sale was contrary to the Cook County Forest Preserve District Act (District Act) (70 ILCS 810/1 *et seq.* (West 2012)) which grants forest preserve districts the power to acquire land in "fee simple" (70 ILCS 810/7, 8 (West 2012)). Plaintiffs contend that because public funds were expended in purchasing the note and before FPD received title to the property, FPD did not acquire Horizon Farms in fee simple.

¶ 12    Plaintiffs' complaint contains three counts—one for declaratory relief and two for injunctive relief. Count I of the complaint, focusing on FPD's statutory authority, requests that the court declare that: (1) FPD's actions in entering into the loan agreements are *ultra vires* and void; (2) FPD's actions in expending public funds for the acquisition of loan documents and for litigation in the foreclosure action are *ultra vires* and void; (3) the purchase of Horizon Farms is void and BMO must return the funds to FPD; (4) FPD does not have the authority to expend public funds in foreclosure litigation, to "purchase commercial paper or liens in private litigation, or act as a private litigant"; (5) FPD's purchase of a promissory note is not equivalent to acquiring land in fee simple; and (6) FPD does not have the statutory authority to expend public funds in private foreclosure litigation, purchase commercial paper, or to act as a speculative investor.

---

[1]    During the pendency of the appeal, the fourth plaintiff, Wanda Dziopek, died.
[2]    The Board was voluntarily dismissed from this taxpayer suit on October 1, 2013.

¶ 13    Count II of the complaint requests: (1) a preliminary and permanent injunction barring further expenditure of public funds (including attorney fees or litigation costs) in the foreclosure action; (2) a mandatory injunction to recover all litigation expenses and attorney fees incurred in the foreclosure action; (3) a preliminary and permanent injunction barring further transfers of title to third parties, modifications, or improvements to the property acquired in the foreclosure action until final judgment in the current case; (4) a mandatory injunction requiring the rescission of the loan documents; and (5) that the court declare the purchase of the land void and order return of public funds.

¶ 14    Count III of the complaint seeks injunctive relief: (1) enjoining FPD from expending further public funds in the foreclosure action, or in the purchase of commercial paper or liens in private litigation; (2) enjoining and preventing the expenditure of any public funds except when the purchase concurrently bestows FPD with acquisition of land in fee simple; (3) enjoining FPD from using public funds to act as a speculative investor; (4) enjoining FPD from acquiring loan documentation secured by property that is appraised at a value less than the price to acquire the documentation; and (5) enjoining FPD's interpretation of section 10 of the District Act (70 ILCS 810/10 (West 2012)) to allow the purchase of commercial loan documents.

¶ 15    Counts I and II also request recovery of plaintiffs' attorney fees and all three counts request any other relief the court deems just and appropriate.

¶ 16    Defendants moved for summary judgment and plaintiffs filed a cross-motion for summary judgment.

¶ 17    On April 23, 2014, the circuit court granted defendants' motion for summary judgment as to counts I and II of plaintiffs' complaint, finding that FPD acted within its statutory

authority in acquiring Horizon Farms. The court denied plaintiffs' cross-motion for summary judgment and granted defendants' motion to dismiss count III.

¶ 18    Plaintiffs filed their notice of appeal on April 24, 2014.

¶ 19                                II. ANALYSIS

¶ 20                            A. Arguments on Appeal

¶ 21    On appeal, plaintiffs argue that FPD is a non-home-rule unit of local government that, in contrast to home rule units of local government, has powers only granted by law. Because Illinois is a mortgage lien theory jurisdiction, plaintiffs argue, FPD only had a lien on Horizon Farms rather than title in fee simple when it bought the mortgage and note from BMO. Plaintiffs contend that the acquisition of a lien, rather than title, in exchange for $14 million was a violation of FPD's limited power to acquire property in fee simple as stated in sections 7 and 8 of the District Act (70 ILCS 810/7, 8 (West 2012)). Furthermore, plaintiffs argue that FPD's internal rules only allow FPD to pay the purchase price for property upon delivery of "property instruments" and that the receipt of the mortgage note was not a "property instrument." Finally, plaintiffs contend that FPD's acquisition of Horizon Farms conflicts with the constitutional protections afforded to private property owners in eminent domain proceedings.

¶ 22    Defendants BMO and FPD filed one brief on appeal. First, defendants characterize this taxpayer suit as a collateral attack on the foreclosure suit because if this court finds that FPD lacks statutory authority to purchase Horizon Farms, then the foreclosure judgment in FPD's favor would be affected. Defendants contend that this court lacks jurisdiction to rescind the order rendered in the foreclosure proceedings. Defendants also contend that this appeal is moot because FPD acquired title to Horizon Farms in May 2014 and, as there is no live controversy,

any ruling on FPD's authority to purchase Horizon Farms would be advisory. Defendants argue that no exceptions to the mootness doctrine apply here.

¶ 23    In response, plaintiffs deny that their complaint involves the foreclosure action. Plaintiffs also argue that defendants have forfeited the mootness argument or, if it is not forfeited, then an actual controversy exists even though the funds have already been expended for the property. Plaintiffs suggest that if the court finds otherwise, two exceptions to the mootness doctrine apply: the "capable of repetition yet evading review" exception and the public interest exception.

¶ 24    As to the merits, defendants jointly argue that FPD acted within its scope of authority because the acquisition of Horizon Farms is consistent with the statutory purpose to create forest preserves, the District Act does not restrict how FPD acquires or purchases property, and the District Act does not indicate when title to fee simple land must vest with FPD. Defendants argue that plaintiffs' interpretation of sections 7 and 8 of the District Act (70 ILCS 810/7, 8 (West 2012))—requiring immediate vesting of fee simple title—is not consistent with the purpose of creating forest preserves. Defendants further contend that the District Act allows FPD to acquire recreational property (70 ILCS 810/38 (West 2012)).  Furthermore, defendants argue that whether FPD violated its internal rules in purchasing Horizon Farms is immaterial to FPD's statutory authority to buy land to create forest preserves.

¶ 25                                B. Standard of Review

¶ 26    We review the circuit court's grant of summary judgment on an issue of statutory construction *de novo*. *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508 (2004).

¶ 27                                C. Legal Analysis

¶ 28                                1. Lack of Jurisdiction

¶ 29    We first address defendants' argument that this court lacks jurisdiction to review this case because if we were to find that FPD lacked statutory authority to purchase Horizon Farms, the judgment in the foreclosure action would be affected.

¶ 30    A reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998). Jurisdiction is the power to hear and determine the subject matter in a controversy between the parties to a suit. *Collins v. Collins*, 14 Ill. App. 2d 350 (1957), *rev'd on other grounds*, 14 Ill. 2d 178 (1958).

¶ 31    Defendants FPD and BMO filed a "motion to transfer related cases" to join the taxpayer suit with the foreclosure suit, citing Cook County General Order 1.3 (Cook Co. Cir. Ct. G.O. 1.3(a) (Aug. 1, 1996)). Subpart (d) of that rule states: "For the convenience of parties and witnesses and for the more efficient disposition of litigation, a judge, upon motion of any party[,] may transfer any action pending before that judge to the Presiding Judge of the division or district for the purpose of transferring the action to any other department, division or district." Cook Co. Cir. Ct. G.O. 1.3(d) (Aug. 1, 1996). Defendants' motion was denied on October 21, 2013 for "reasons stated on the record." We have no information about the reasons that the motion was denied, as the record on appeal does not contain a transcript of that oral ruling.

¶ 32    In our jurisdictional analysis, we find that when the mortgage foreclosure action was not of the same nature as the taxpayer suit, this court is not precluded from reviewing FPD's statutory authority, even if it is possible that a judgment in this case would affect the judgment in the foreclosure action. Similar to the motion to transfer related cases that was filed in this case, a motion to consolidate (Cook Co. Cir. Ct. G.O. 3.1 (1.6) (June 2, 1980)) asks whether the two cases are of the " 'same nature, arise from the same act or event, involve the same or like issues, and depend largely upon the same evidence.' " *La Salle National Bank v. Helry Corp.*, 136 Ill.

App. 3d 897, 905 (1985) (quoting *Robinson v. Robinson*, 100 Ill. App. 3d 437, 449 (1981)). Here, the foreclosure action and the taxpayer suit were not of the same nature. In the foreclosure action, FPD submitted documentary proof that it owned the mortgage and note. The taxpayer suit, on the other hand, challenged FPD's ownership of the mortgage and note based on the District Act, not based on the documentary proof. The taxpayer suit sought to benefit the taxpayers who are responsible for replenishing the tax reserves of Cook County. *Price v. City of Mattoon*, 364 Ill. 512, 514 (1936). Plaintiffs bring this action on behalf of all taxpayers. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 493 (2005) (stating that a "taxpayer action" is a suit brought by private persons "on behalf of themselves and as representatives of a class of taxpayers similarly situated within a taxing district or area." (Internal quotation marks omitted)). Plaintiffs do not seek a personal gain in this action. *Egidi v. Town of Libertyville*, 218 Ill. App. 3d 596, 605 (1991). In contrast, in the foreclosure action, plaintiffs and their affiliated corporate entities sought to defend their property against foreclosure for their own benefit and the benefit of their companies. Furthermore, FPD and BMO, who argue against our jurisdiction, provided no showing that the foreclosure court reviewed FPD's statutory authority in the foreclosure action. Based on the two suits' different natures, we are not deprived of jurisdiction.

¶ 33                                    2. Mootness

¶ 34        Defendants further complain that this case is moot because after plaintiffs filed their notice of appeal in this case, the foreclosure court entered an order confirming the sale and a deed to Horizon Farms was subsequently delivered to FPD.

¶ 35        "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004) (citing *Steinbrecher v.*

*Steinbrecher*, 197 Ill. 2d 514, 522-23 (2001)). An issue is moot if no actual controversy exists or events happen that make it impossible for the court to grant effectual relief. *In re India B.*, 202 Ill. 2d 522, 542 (2002); *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992). "The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977). A case is moot when plaintiffs have secured what they basically sought and a resolution of the issues could not have any practical effect on the existing controversy. *People ex rel. Newdelman v. Weaver,* 50 Ill. 2d 237, 241 (1972).

¶ 36    We find that this appeal is not moot as an actual controversy over the expenditure of public funds exists. Plaintiffs have not already received what they sought in this taxpayer suit: neither a declaration of FPD's lack of statutory authority to purchase a mortgage and note secured by land and to participate in the foreclosure sale of that collateral nor an unwinding of FPD's purchase of Horizon Farms. In this way, the instant suit is unlike two cases FPD cites, *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 236 (1982) (finding the appeal moot when the money in dispute had been paid during the appeal), and *Leafblad v. Skidmore*, 343 Ill. App. 3d 640, 642 (2003) (finding the appeal moot when the taxpayer voluntarily paid the disputed taxes). Neither does FPD's citation to *Caro v. Whitaker*, 386 Ill. App. 3d 485 (2008), convince this court that the appeal is moot. In that case, plaintiff's complaint sought declaratory and injunctive relief to prevent already-awarded grants from being disbursed claiming that the grants were based on an unconstitutional exercise of gubernatorial power. *Caro*, 386 Ill. App. 3d at 487. However, because the complaint failed to name the proper defendants, the court could not grant the relief sought and the appeal was moot. *Id.* at 488. Here, the relevant actor, FPD, is a named defendant.

¶ 37    Furthermore, even though the disputed money has already been spent, the appeal is not moot because "constituents of a taxing body, acting on behalf of that body, may *** invoke actions to recover public funds which have been expended unlawfully." *Egidi*, 218 Ill. App. 3d at 606 (citing *Kinzer v. City of Chicago*, 169 Ill. App. 3d 447, 457 (1988)). See also *People ex rel. Hamer v. Board of Education of School District No. 109*, 130 Ill. App. 2d 592, 594 (1970) (finding that a taxpayer's suit was not barred by the fact that a purchase of real estate had already been completed). In other words, the taxpayers may seek declaratory and injunctive relief even though the title to Horizon Farms has vested in FPD because it would be the taxpayers' responsibility to replenish tax revenue for FPD's use going forward.

¶ 38                     3. Statutory Construction

¶ 39    We next address the statutory construction of the District Act. When interpreting a statute, the primary function of this court is to ascertain and give effect to the intent of the legislature. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board,* 165 Ill. 2d 80, 87 (1995). Additionally, "[a] court may not add provisions that are not found in a statute, nor may it depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express." *Schultz v. Illinois Farmers Insurance Co.,* 237 Ill. 2d 391, 408 (2010) (citing *Madison Two Associates v. Pappas,* 227 Ill. 2d 474, 495 (2008)). Special districts, like the FPD, are creations of the legislature and the "[s]tatutes granting power to them are to be strictly construed and their powers are not to be enlarged by construction." *Forest Preserve District v. Jirsa*, 336 Ill. 624, 628 (1929); Ill. Const., 1970, art. VII § 8.

¶ 40    Forest preserve districts within a county of 3 million people or more have the power to create forest preserves. 70 ILCS 810/1, 7 (West 2012). For that purpose, forest preserve

districts "shall have the power to acquire in fee simple in the manner hereinafter provided." 70 ILCS 810/7 (West 2012). The "manner" by which the forest preserve district may acquire land for its purposes is "by gift, grant, legacy, purchase or condemnation" (70 ILCS 810/8 (West 2012)). The power to create forest preserves is exercised in order to "protect[] and preserv[e] the flora, fauna, and scenic beauties *** and to restore, restock, protect and preserve the natural forests *** for the purpose of the education, pleasure, and recreation of the public." 70 ILCS 810/7 (West 2012). Beyond the power to create forest preserves, the District Act also articulates other purposes of a forest preserve district, which include: consolidating forest preserves, preserving and managing water resources in the district, protecting forest preserves, and maintaining forest preserves for use by the public. 70 ILCS 810/7, 8 (West 2012). Because plaintiffs' position imputes a limitation to the manner in which FPD may purchase property that the legislature did not express in the District Act, we affirm the circuit court's ruling.

¶ 41    "Fee simple" means absolute perfect title. *Frink v. Darst*, 14 Ill. 304, 309 (1853). The term is one that defines "the quantity of the estate." *Id.*  Since 1913, the words "fee simple" have been in the enabling act governing forest preserve districts in Illinois. See *Perkins v. Board of Commissioners*, 271 Ill. 449, 456 (1916) (upholding the constitutionality of the Forest Preserve Act of June 27, 1913, which gave commissioners of forest preserve districts the power to acquire land, title to which shall be taken in fee simple absolute "by gift, grant, devise, or purchase, or by condemnation"). Between 1913 and 1977, the General Assembly amended the enabling act 10 times, preserving the words fee simple in each version. In this context, we acknowledge that "when the General Assembly amends a statute, portions of the old law which are repeated *** are regarded as a continuation of the existing law and not the enactment of new law upon the subject." *People ex rel. Brenza v. Fleetwood*, 413 Ill. 530, 547 (1952). In 1977, the Illinois

11

legislature passed the District Act, which pertained to counties of 3 million or more people, while the original enabling act pertained to the rest of the state. 70 ILCS 805/6 (West 2012); see 80th Ill. Gen. Assem., House Bill 1603, 1977 Sess. (statements of Senator Wooten).

¶ 42    The supreme court has held that municipalities may engage in facially "private" activities when the activities at issue in those cases served a public purpose. See *People ex rel. City of Salem v. McMackin*, 53 Ill. 2d 347, 358, 367 (1972) (holding that the Industrial Project Revenue Bond Act (Ill. Rev. Stat. 1971, ch. 24, ¶ 11-74-1 *et seq.*), whereby municipalities could issue bonds to finance industrial projects, did not violate public policy on the theory that the municipality was competing in the real estate business with private businesses); *Illinois Power Co. v. City of Jacksonville*, 18 Ill. 2d 618, 621 (1960) (holding that a contract for the purchase of power was within the authority of a municipality, regardless of whether the purchasing city was buying the power for its own use or for resale to another city). Moreover, other special districts are able to contract with private entities to operate their facilities, such as the Regional Transportation Authority Act (70 ILCS 3615/2.03) (West 2012) and library districts (75 ILCS 16/30-55.40 (West 2012)). It is a reasonable conclusion, therefore, that even if purchasing a mortgage and participating in a foreclosure sale are typically "private" activities, our jurisprudence requires us to review the ultimate purpose of the activity. In this case, the ultimate purpose of FPD's purchase was the creation of a forest preserve. FPD did not acquire the property for profit but rather for a public purpose.

¶ 43    Plaintiffs contend that "a purchase of land in fee simple contemplates payment of money in return for a deed." Plaintiffs did not provide relevant authority for this proposition, and our research did not reveal any. Upon review of numerous enabling statutes of special districts in Illinois, we are unaware of any enabling statute that requires the simultaneous exchange of title

and money, while a number of enabling statutes allow special districts to acquire property. Pub. Act 84-543 (eff. Sept. 17, 1985) (cemetery maintenance districts); 70 ILCS 200/2-20 (West 2012) (civic center authorities); 70 ILCS 605/4-17 (West 2012) (conservation districts); 70 ILCS 910/15 (West 2012) (hospital districts); 70 ILCS 3610/5(b) (West 2012) (mass transit districts); 70 ILCS 1105/7, 8 (West 2012) (museum districts); 70 ILCS 1205/8-1 (b)(1), (2) (West Supp. 2013) (park districts), 70 ILCS 1505/15 (West 2012) (Chicago Park District Act); 70 ILCS 2605/8 (West 2012) (sanitary districts); 70 ILCS 405/22.04 (West 2012) (soil and water conservation districts).[3] See also 605 ILCS 5/6-801, 6-802 (West 2012) (road districts). If we were to interpret the District Act to require the simultaneous exchange of money and title, our interpretation could affect a number of other special district statutes that authorize the acquisition of property without such a limitation. Moreover, other sections of the District Act do not mention the "fee simple" limitation on FPD's power to acquire property. For example, section 4 states "Every such district may contract, acquire and hold real and personal property necessary for its corporate purposes" and section 10 gives the power "to purchase or lease as lessee real or personal property" to the board of the FPD and allows for said purchase to be paid in installments. 70 ILCS 810/4, 10 (West 2012).

¶ 44    For illustration purposes only, we briefly contrast FPD's power to acquire land in fee simple and the quick-take provision within the Eminent Domain Act (735 ILCS 30/1-1-1 *et seq.* West 2012)), which allows a condemnor to acquire fee simple title to property. 735 ILCS 30/20-5-5(b) (West 2012).[4] Unlike the District Act at issue, the quick-take statute expressly

---

[3]    We have included authority that grants special districts the power to acquire "real property" as well as property in "fee simple" because the Illinois Supreme Court has held that "real property" includes fee simple title. *Sanitary District v. Manasse*, 380 Ill. 27, 32-33 (1942).

[4]    Admittedly, the two statutes have different goals. Quick-take proceedings are designed to "place possession and title [to land for necessary public-works projects] in the State prior to the

contemplates a timeframe for *vesting of fee simple title* in the local government plaintiff. *Id.* That statute specifically provides that the government plaintiff may file a motion requesting, among other options, that it be vested with fee simple title "immediately or at some specified later date" based on the necessity of the plaintiff's public works project. *Id.* While both statutes allow the local government plaintiff to acquire property in fee simple, only the quick-take statute specifies a timeframe within which fee simple title vests with the plaintiff. Compare 735 ILCS 30/20-5-5(b) (West 2012), with 70 ILCS 810/7, 8 (West 2012). The quick-take statute's language—that fee simple title can vest "immediately or at some specified later date"—suggests that a statute without similar language does not imply the *immediate* vesting of fee simple title. The District Act contains the phrase in "fee simple" without a timeframe for the FPD's vesting of title to the fee simple property. 70 ILCS 810/1 *et seq.* (West 2012). There is no reason this court should limit the power of FPD to acquire property when that limitation is not expressed in the District Act itself. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010) (prohibiting courts from adding provisions that are not found in a statute or reading into the law exceptions, limitations, or conditions that the legislature did not express).

¶ 45      Plaintiffs argue that FPD's acquisition of Horizon Farms conflicts with the process of acquiring property by eminent domain. We do not see such a conflict. The District Act states: "Notwithstanding any other provision of this Act, any power granted under this Act to acquire property by condemnation or eminent domain is subject to, and shall be exercised in accordance with, the Eminent Domain Act." 70 ILCS 810/8.5 (West 2012). The legislature was presumably

---

determination of just compensation" (*Forest Preserve District v. West Suburban Bank*, 249 Ill. App. 3d 900, 903 (1993), *rev'd on other grounds*, 161 Ill. 2d 448 (1994)) and the condemnor has not yet compensated the landowner when it requests the fee simple title (735 ILCS 30/20-5-5(b) (West 2012)). On the other hand, the District Act's purpose is to regulate forest preserve districts' creation of forest preserves. 70 ILCS 810/7 (West 2012).

aware of the powers of eminent domain in drafting and then amending both the District Act (70 ILCS 810/1 *et seq.* (West 2012)) and the Downstate Forest Preserve District Act (70 ILCS 805/6 (West 2012)) multiple times. *Village of Fox River Valley Gardens v. Lake County Forest Preserve District*, 224 Ill. App. 3d 919, 927 (1992) (stating "[h]ad the legislature intended such a limitation, it could easily have worded the statute accordingly"). Even the earliest version of the enabling District Act did not call for eminent domain to be the exclusive procedure for acquiring property. See *Perkins*, 271 Ill. at 467 (noting that the Forest Preserve District Act of June 27, 1913, provided for acquisition of property "by gift, grant, purchase, or condemnation"). Condemnation is simply one of the procedures—along with "gift, grant, legacy, [or] purchase"— for FPD to acquire land. 70 ILCS 810/8 (West 2012). Furthermore, special districts can have both the power to acquire property by means discussed in the enabling statute (*i.e.* gift, grant, purchase), *or* by eminent domain. See *e.g.*, 70 ILCS 605/4-17 (West 2012) (conservation districts); 70 ILCS 2605/8 (West 2012) (sanitary districts). These examples include language cautioning that when property is acquired by means of eminent domain, that the Eminent Domain Act must be complied with (70 ILCS 605/4-17.5 (West 2012) (conservation districts); 70 ILCS 2605/8.5 (West 2012) (sanitary districts)), just as the District Act at issue does (70 ILCS 810/8.5 (West 2012)).

¶ 46 According to plaintiffs' position, this court should prohibit FPD from purchasing a mortgage and participating in a foreclosure sale. Yet, if a third party purchased Horizon Farms, FPD would be able to acquire the land by eminent domain, assuming it would be able to prove that the acquisition was necessary for a public purpose. 735 ILCS 30/5-5-5(b), (e) (West 2012). This process could take much longer, possibly resulting in a higher price for the land. It would be unusual to prohibit the instant acquisition of Horizon Farms, thereby forcing FPD to initiate

15

eminent domain proceedings or purchase the land outright from a third party. Moreover, FPD could acquire the land by gift according to its own statute. 70 ILCS 810/7 (West 2012). It is presumed the legislature did not intend its legislation to result in absurd or unreasonable consequences. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 363 (1986); *Tersavich v. First National Bank & Trust Co.*, 194 Ill. App. 3d 972, 977-78 (1990).

¶ 47        Plaintiffs' characterization of the purchase at issue—that FPD acted as a speculative investor because public funds were expended before title vested to the property—fails to acknowledge that the highest bidder at the foreclosure sale would have had to pay off the amount of FPD's interest as FPD held the senior lien on the property. 735 ILCS 5/15-1512(c) (West 2012) (liens recognized by the court are paid in order of priority by the selling officer at the foreclosure sale). Moreover, after the foreclosure sale and delivery of the deed, FPD owned Horizon Farms in fee simple. Neither the record nor the parties' briefs reveal that there were superior liens on the property or any other encumbrances.

¶ 48        Finally, plaintiffs complain that Cook County Forest Preserve District's Code (the Code) prohibits the purchase at issue because FPD did not receive a "property instrument" upon payment of the purchase price of Horizon Farms. For support, plaintiffs point to the provision of the Code that requires members of the Board once "title [to land] in fee simple has been found" to "pay *as the purchase price*, to the grantor or grantors *upon the delivery of property instruments*." (Emphasis added.) Cook County Forest Preserve District Code § 1-9-1(D) (eff. Jan. 1, 1995). However, courts may not adjudicate actions brought to overrule the decisions of a legislative body based upon that legislative body's alleged failure to follow self-imposed requirements. *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 179 (1988) (plaintiffs could not maintain that the process of decertifying a landmark violated the

City of Chicago's landmark ordinance when the ordinance was not enacted in violation of a constitutional or statutory provision); *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 404 (1988) (the court declined to review a claim that the city council failed to follow an internal rule in the passage of a fuel tax). In other words, "[t]his court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body itself." *Chirikos v. Yellow Cab Co.*, 87 Ill. App. 3d 569, 574 (1980) (the court would not invalidate a taxicab fare increase on the basis that the data submitted to support the increase did not comply with a city council ordinance governing taxicab fare increases). These cases concern home rule entities, which FPD is not. Nonetheless, in this particular taxpayer suit, where the legislative body of FPD, the Board, is no longer a defendant, and plaintiffs do not allege that the Code provision violates any other statutory or constitutional provision other than the "fee simple" language discussed above, we will not review plaintiffs' attempt to defeat the acquisition of Horizon Farms based on an internal rule that FPD imposed upon itself. Perhaps the Code simply did not contemplate a mortgage purchase when it was written in 1988.[5]

¶ 49    In sum, we hold that FPD was within its statutory authority to acquire the property in the manner it did and summary judgment in defendants' favor on Counts I and II was proper. We also affirm the trial court's granting of defendants' motion to dismiss Count III of plaintiffs' complaint.

¶ 50                                    D. Motion to Strike

---

[5]    The relevant section of the Code was amended in 1995 but that amendment did not affect the language at issue. See Cook County Forest Preserve District Code, Ordinance No. 95-01-04-01 (approved Jan. 3, 1995).

¶ 51    Lastly, plaintiffs filed a motion to strike two documents attached to FPD's response brief—the order approving the foreclosure sale and entry of deficiency judgment as well as the judicial sale deed. Because our decision does not rely on the documents complained about, we deny plaintiffs' motion to strike.

¶ 52                              III. CONCLUSION

¶ 53    For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 54    Affirmed.